OPINION OF THE COURT
John F. O’Donnell, J.
The respondent has filed objections to an order of a Hearing Examiner which granted the petitioner an increase in child support, and the petitioner has filed a rebuttal.
In most cases, where a Hearing Examiner has properly exercised jurisdiction, any findings should not be rejected unless contrary to the weight of the credible evidence or in error as a matter of law (Matter of Weiner v Weiner, 97 Misc 2d 920). The court should generally defer to the Hearing Examiner who was in the best position to assess the credibility of the witnesses and the evidence proffered (see, e.g., Matter of Avitzur v Rose, 174 AD2d 843; Matter of Alamo v Alamo, 168 AD2d 493; Matter of Drago v Drago, 138 AD2d 704, 705).
The Hearing Examiner determined that the respondent’s obligation pursuant to the Child Support Standards Act (CSSA) (L 1989, ch 567) would be $189 per week. This amount was then reduced to $125 per week to take into consideration the respondent’s contributions of support during extensive periods of visitation and other, nonmonetary contributions. The amount ordered is far greater than what respondent was previously required to pay, and he asserts that the increase is inappropriate since no evidence was offered to prove that the needs of the child were not being met under the prior order.
A consideration of the child’s needs has until recently been integral to the success of an upward modification petition (see, Matter of Brescia v Fitts, 56 NY2d 132; Matter of Michaels v Michaels, 56 NY2d 924; Szablak v Keida, 155 AD2d 887). The CSSA created drastic changes in the child súpport laws, however. Children’s rights to share in the economic status of both parents is now a central theme of those statutes. (See, Governor’s Mem approving L 1989, ch 567, 1989 NY Legis Ann, at 249.) A recent Second Department case reinforces that view with regard to public assistance matters. (See, Matter of Commissioner of Social Servs. of City of N. Y. v Currie, 182 AD2d 433.) It is also clear that when the petitioner seeks an order of support it is not bound by the amount of the child’s portion of the public assistance grant (Family Ct Act § 413 [1] *808 [g]; Matter of Commissioner of Social Servs. v Segarra, 78 NY2d 220).
Chapter 59 of the Laws of 1993 effective July 1, 1993, calls for an automatic adjustment of child support orders issued on behalf of a child in receipt of public assistance where, as of the date of application for adjustment, the amount of child support pursuant to the CSSA would deviate by at least 10% from the previous order. No application has yet been made by the petitioner pursuant to this statute, but if such application is made, it seems an assertion of increased needs of the child will not be necessary. Recent post-Segarra cases (supra) place a heavy emphasis on the presumptive application of the CSSA guidelines absent the existence of a specifically enumerated "variance” factor. (See, Family Ct Act § 413 [1] [f| [1]-[10]; Matter of Monroe County Dept. of Social Servs. v DeGraff, 178 AD2d 976; Matter of Monroe County Dept. of Social Servs. v Henderson, 177 AD2d 1058; Matter of Monroe County Dept. of Social Servs. v Paola, 172 AD2d 1040.)
That respondent’s financial status has greatly improved, albeit through unfortunate circumstances, is unquestioned. Under the former support order, respondent was not even paying the child’s portion of the public assistance grant, for which he was unequivocally obligated (Social Services Law §§ 101, 102).
The Hearing Examiner recognized the respondent’s contributions to the child’s support and gave him credit for those. The amount to be credited was within his discretion and should not be disturbed. (See, Alamo v Alamo, supra; Monroe County Dept. of Social Servs. v Pendelton, 172 AD2d 1041.)
The Segarra Court (supra, at 255) it should be noted, found that "[b]oth Federal and State regulations provide for the distribution of support collected on behalf of an AFDC recipient in excess of an AFDC grant”. As the Segarra Court explains (at 225), the Federal and State regulations establish a tiered distribution system for child support received on behalf of a family in receipt of public assistance. (See, 42 USC § 657 [b] [l]-[4]; 45 CFR 302.51 [b] [1]-[5]; 18 NYCRR 347.13 [b] [2]-[4].) The first $50 of monthly support collected is distributed to the family and disregarded as income. For any amount exceeding $50 the State may retain, as reimbursement, an amount equal to the assistance payment. "Any amount collected in excess of that month’s assistance payment is paid to the family to the limit of the amount required by the court order” *809 (Matter of Commissioner of Social Servs. v Segarra, supra, at 225).
If a current support payment makes a family ineligible for Aid for Dependent Children, the Commissioner’s assignment terminates save any unpaid support obligations that accrued under the assignment (45 CFR 302.51 [f]; 18 NYCRR 347.13 mi
The second issue raised by the respondent concerns the Hearing Examiner’s order that respondent put $40,000 in a jointly controlled account with the Erie County Surrogate’s Court Guardian Clerk to be used for the educational and best interests of Anthony. The operative section of the Family Court Act, section 413 (1) (e), permits a court to allocate a proportion of a "non-recurring payment * * * from extraordinary sources not otherwise considered as income pursuant to this section.” The statute then lists examples of what would constitute such a nonrecurring payment. The respondent has set forth several reasons why his receipt of a $1.3 million personal injury award does not qualify as a nonrecurring payment. He argues that the statute specifically defines a nonrecurring payment as only including sources not otherwise considered as income. This court agrees with respondent’s interpretation of the statute. There is no case law and scant commentary interpreting this section. All of respondent’s present income, out of which child support is paid, is derived from income generated by the investment of the award. There appears to be no authority under the statute to order a distribution of the underlying asset where adequate income exists from which child support is being paid. Moreover, receipt of compensatory damages in a personal injury award "is intended to put the injured party in the position in which he was before he was injured” (36 NY Jur 2d, Damages, § 1, at 12, citing Reid v Terwilliger, 116 NY 530 [1889]). A portion of the award is for past lost wages and pain and suffering. This distinguishes the personal injury award, and makes it less likely that the Legislature meant to include it as a one time nonrecurring payment, like lottery winnings or an inheritance.
Nothing in this order precludes petitioner from filing a subsequent petition requesting respondent to contribute to postsecondary education for Anthony, pursuant to Family Court Act § 413 (c) (7). It would be premature to order such payments at this time, however.
*810 For these reasons, it is hereby ordered, that the portion of the order creating the $40,000 account is hereby vacated; and it is further ordered, that all other portions of the Hearing Examiner’s order, entered June 30, 1993 shall continue in full force and effect.